### HUNTINGDON COUNTY.

JANUARY TERM, 1882, No. 390.                    MAY 22D, 1882.

## Collom's Appeal.

1. A debtor, who is not a resident of this Commonwealth, is not entitled to
claim the benefit of the Exemption Act of April 9th, 1849.
2. *Semble,* that the proviso of the 4th section of the Act of May 8th, 1874,
which says, "that any exemption law of this Commonwealth shall not be con-
strued to extend to any debtor not a resident thereof," is not confined to cases
of foreign attachment issued by justices of the peace under the preceding sec-
tions.

Before SHARSWOOD, C. J.; and MERCUR, GORDON, TRUNKEY,
STERRETT, and GREEN, JJ. PAXSON, J., absent.

Appeal of Samuel W. Collom from the decree of the Court
of Common Pleas of *Huntingdon County*, distributing the
proceeds of the sheriff's sale of the real estate of Aaron
Dunsworth.

The real estate of the defendant, Dunsworth, was sold by
the sheriff, April 8th, 1881, for $750, and the fund in court
was referred to an auditor for distribution. The auditor
found the facts to be as follows:

Dunsworth resided in Huntingdon, where the debts were
contracted upon which the judgments claiming the fund
were entered. In 1873, together with John L. Etter, he
gave a judgment to Samuel W. Collom for $750. It was en-
tered up and became a first lien. In 1874, Dunsworth gave
a judgment to G. B. Armitage, trustee, for $357.50, and Col-
lom entered into an agreement that this latter judgment
should have priority. In 1879, Dunsworth went to Youngs-

[Collom's Appeal.]

town, in the State of Ohio. He took his family there in January or February, 1880, and has resided there ever since. The fund for distribution, after payment of costs, was $689.25. The auditor awarded $394.25 to the Armitage judgment; $30.95 to a municipal claim, and the balance of $264.05 he applied to "Aaron Dunsworth's claim, under the exemption law of 9th April, 1849."

Collom filed exceptions to the distribution, upon the grounds, *inter alia*, that the auditor erred in applying any part of the fund to the claim for exemption, and in not appropriating the balance to the payment of his judgment.

November 21st, 1881. The Court below overruled the exceptions and confirmed the report of the auditor.

Collom then appealed, assigning as errors, *inter alia*, that the Court erred in not sustaining these exceptions and in entering its decree.

*Simpson & Armitage* and *W. H. Woods*, for the appellant.

The Act of 1849, when it speaks of a debtor and his family, evidently means a debtor who is a resident of the State.

Each State has its own exemption laws for the benefit of its own people. If Dunsworth can claim the benefit of the Act of 1849 and take away $300, and we should follow him to Ohio, and attempt to collect our claim there, he could claim the benefit of the exemption law of that State,—thus giving him a double exemption.

It was not the intention of the legislature, in enacting the Exemption Act, to legislate against the interest of our own citizens who had honest claims, in favor of strangers and foreigners: Yelverton *v.* Burton, 2 Casey, 354; McCarthy's Appeal, 18 P. F. Smith, 219.

*Brown & Bailey*, for Dunsworth, and *John W. Mattern*, for the borough of Huntingdon.

If the legislature intended that the humane provisions of these laws should be enjoyed only by our citizens so long as they continued to reside in the State, it would have taken but very few additional words to have said so. It is not for this Court to make the law; it is its duty to construe it when made by the well-established rules of construction.

An exemption law which allows the citizens of Pennsylvania the privilege of exemption, and forbids it to citizens of Ohio, would be in violation of the Constitution of the United States: Ward *v.* Maryland, 12 Wallace, 418.

OCTOBER 4TH, 1882.—The opinion of the Court was delivered by STERRETT, J.

The only question in this case that requires any consider_

[Collom's Appeal.]

ation, is that raised by the first, third, and fourth specifications of error, viz.: Whether a non-resident of this Commonwealth is entitled to claim the benefit of the Exemption Act of April 9th, 1849, which provides, "That in lieu of the property now exempt from levy and sale on execution, issued upon any judgment obtained upon contract and distress for rent, property to the value of $300, exclusive of all wearing apparel of the defendant and his family, and all Bibles and school-books in use in the family (which shall remain exempt as heretofore), and no more, owned by or in the possession of any debtor, shall be exempt from levy and sale on execution or distress for rent."

The fact that the defendant in the execution, to whom part of the fund raised thereon was awarded under the claim of exemption, was a citizen of the State of Ohio, and had resided there with his family a considerable time before the execution was issued, was distinctly found by the auditor and is not now questioned. While non-resident debtors may perhaps be within the letter of the act, we do not think they are within its spirit. As was said by Mr. Justice Woodward in Yelverton *v.* Burton, 2 Casey, 351, and afterwards quoted approvingly by the present chief justice in McCarthy's Appeal, 18 P. F. Smith, 217, we do not legislate for men beyond our jurisdiction. The Act of 1849 was designed for our own citizens, for the families of the poor who are with us, that the rapacity of creditors might not strip them of every comfort and convenience.

These expressions were first used in a case differing in some of its features from the one now before us, but they aptly express what we conceive to be the true intent and meaning of our system of exemption, of which the Act of 1849 forms a part. That clause of the act, which specifically includes wearing apparel, "and all Bibles and school-books in use in the family," of the debtor, necessarily implies a domicil or family residence within the reach of State process. The Act of April 14th, 1851, Purd., 416, pl. 60, expressly limits the benefit of the exemption provided therein to "the widow or the children of any decedent dying within this Commonwealth." In like manner the exemption of sewing-machines, under the Act of 1869, extends only "to seamstresses residing in this Commonwealth." In the case first above cited, it was held that exemption cannot be claimed by defendants in foreign attachment. The Act of May 8th, 1874, entitled "An Act to provide for the collection of debts against non-resident debtors," provides, "That any exemption law of this Commonwealth shall not be construed to extend to any debtor not a resident thereof."

[Hosie *et al. v.* McCann.]

It is contended that this proviso, contained in the fourth section of the act, applies only to cases of foreign attachments issued by justices of the peace under the preceding sections. It is true the purpose of a proviso generally is to except something from the enacting clause, to qualify or restrain its generality, or to exclude some possible ground of misinterpretation; but this is not always the case. Taking into consideration the object of the act, as comprehensively expressed in its title, in connection with the phraseology of the proviso, we think the latter was not intended to be confined in its operation only to cases falling within the jurisdiction conferred by preceding sections of the act; but, on the contrary, it was intended to exclude all non-residents of the State from the benefit of any exemption law of this Commonwealth in any proceedings for the collection of debts due by them. But, whether this be so or not, we are satisfied the spirit of the Act of 1849, when properly construed, excludes the appellee. And it is right that it should be so. Each State has its own exemption laws for the benefit of its own citizens. If non-residents are permitted to participate in the benefit thus provided, they may claim it in every State in which they happen to own property. This would likely work great injury to creditors by withdrawing from their grasp money or property which should, in justice, be applied to the payment of their claims.

Decree reversed at the costs of the appellee, Aaron Dunsworth; and it is now adjudged and decreed that the sum of $264.05, erroneously appropriated to his claim, be paid to the appellant on account of judgment, No. 203, August term, 1878, S. W. Collum *v.* A. Dunsworth.